UNITED STATES of America, Appellee,

v.

Alexandros VASSILIOU,
Defendant-Appellant.

No. 880, Docket 86–1329.

United States Court of Appeals,
Second Circuit.

March 5, 1987.

Decided June 3, 1987.

Peter Albert McKay, New York City, for defendant-appellant.

Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y., New York City (Elliot B. Jacobson and Aaron R. Marcu, Asst. U.S. Attys., of counsel), for appellee.

Before OAKES and WINTER, Circuit Judges, and METZNER, Senior District Judge.*

WINTER, Circuit Judge:

Alexandros Vassiliou appeals from a judgment of conviction entered following a guilty plea. The indictment charged Vassiliou with possession of an unlicensed firearm at the Stewart Army Subpost in Newburgh, New York, in violation of 18 U.S.C. § 13 (1982) and New York Penal Law §§ 265.02(1) and 265.01(1) (McKinney 1980 & Supp.1987) and with possession of a loaded firearm, in violation of 18 U.S.C. § 13 and New York Penal Law § 265.02(4) (McKinney 1980). Vassiliou's motion to suppress the firearm that is the subject of the indictment and various statements, made after the firearm's discovery was denied by Chief Judge Brieant on May 13, 1986. Vassiliou pleaded guilty to possession of a loaded firearm on May 22, 1986, reserving his right to appeal from the denial of his motion to suppress.

## BACKGROUND

The facts underlying Vassiliou's conviction are essentially undisputed. In July 1983, Vassiliou was a contractor fulfilling a contract with the United States Army at the Army Subpost at Stewart Airport. On the morning of July 27, Vassiliou entered the subpost looking for Eric Morgan, a subcontractor. The two men soon became engaged in a "heated" dispute. Ultimately, the military police arrived at the scene, and Morgan and Vassiliou agreed to go to the military police station at the subpost to resolve the dispute.

Vassiliou drove his own car and parked it in front of the station. Once at the station, Morgan, apparently out of the presence of Vassiliou, told the police that Vassiliou had threatened him with a handgun and then had hidden the gun in his car. Morgan's detailed description of the car matched that of the car Vassiliou had parked outside the station. In a separate interview, Vassiliou confirmed that he and Morgan had argued but did not mention a weapon.

The military police immediately conducted a search of Vassiliou's car and discovered under the rear seat a .38 caliber Smith and Wesson revolver loaded with hollow point rounds. The police did not seek a warrant or Vassiliou's consent prior to the search. When confronted with the weapon, Vassiliou admitted that it belonged to him and that he did not have a valid permit for it.

On April 14, 1986, Vassiliou moved to suppress the weapon and his statements concerning the weapon. Chief Judge Brieant denied the motion on May 13, holding that the military police had probable cause to believe that the gun was in Vassiliou's car and that the likelihood that the car would soon be leaving the area justified the warrantless search. For reasons discussed below, we affirm.

## DISCUSSION

■ Vassiliou argues first that the district court improperly denied his motion to

---

* The Honorable Charles M. Metzner, Senior District Judge for the Southern District of New York, sitting by designation.

suppress. We disagree. Under the so-called automobile exception to the fourth amendment's warrant requirement, law enforcement officials may conduct a warrantless search of a movable vehicle when they have probable cause to believe it contains contraband or evidence of a crime. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). *See also United States v. Johns*, 469 U.S. 478, 105 S.Ct. 881, 885, 83 L.Ed.2d 890 (1985); *Colorado v. Bannister*, 449 U.S. 1, 3, 101 S.Ct. 42, 43, 66 L.Ed.2d 1 (1980) (per curiam). In the present case, the military police had such probable cause. Morgan had told the police that Vassiliou had brandished a gun in his presence and then concealed it in his car. He also described Vassilou's car in great detail. The reliability of these statements was established by a number of factors. First, Morgan had personally observed Vassiliou's conduct. *See United States v. Gaviria*, 805 F.2d 1108, 1115 (2d Cir.1986) ("a criminal participant or witness to a crime 'need *not* be shown to have been previously reliable before the authorities may rely on his statements'") (quoting *United States v. Rueda*, 549 F.2d 865, 869 (2d Cir.1977) (emphasis in original)). Second, Vassiliou himself had confirmed that he had engaged in a heated dispute with Morgan, thus corroborating an important aspect of Morgan's story. Indeed, the only portion of Morgan's account that Vassiliou omitted was his display of a handgun. Similarly, the fact that Vassiliou's vehicle was parked in front of the station allowed the police to confirm Morgan's description of the vehicle in which Vassiliou allegedly had concealed the weapon. Finally, Morgan had no apparent motive to lie about Vassiliou's gun. Although it was in Morgan's interest to cast blame on Vassiliou for the dispute that brought the two men to the station, a false contention that Vassiliou had a gun concealed in his car would only have undermined Morgan's credibility.

We believe that Morgan's statement was thus "reasonably corroborated by other matters within the officer's knowledge." *Illinois v. Gates*, 462 U.S. 213, 242, 103 S.Ct. 2317, 2334, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960)). The police therefore need not have received "reliable information [from Morgan] on previous occasions" or undertaken further "independent police work" before relying on his account as establishing probable cause to believe that Vassiliou's car contained a weapon. We conclude that the circumstances confronting the police at the time of the search adequately justified Chief Judge Brieant's finding of probable cause.

Vassiliou contends that the "automobile exception" does not apply because his car was on a "military outpost over which the military police had plenary jurisdiction" and therefore was not mobile. Because entry to and exit from the post were controlled by the military police, Vassiliou argues, he could not "simply have driven away." Nevertheless, Vassiliou could have left the military police station while a warrant was being obtained and disposed of the gun elsewhere on the base. These are precisely the sort of exigent circumstances resulting from the automobile's inherent mobility that the Supreme Court has recognized as justifying the automobile exception to the warrant requirement. *See Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970); *cf. Coolidge v. New Hampshire*, 403 U.S. 443, 460, 91 S.Ct. 2022, 2034, 29 L.Ed.2d 564 (1971).[1]

Vassiliou's second contention is that his trial counsel's performance was so inept as to constitute ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674

---

1. We reject Vassilou's further argument in this regard that, instead of searching his car without a warrant, the military police were required "to seize the keys from [him] and then to follow the proper procedure to obtain a warrant to search his car." *See Chambers v. Maroney*, 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970) ("For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant.").

(1984). Vassiliou complains that by waiving a fact-finding hearing, his counsel improperly stipulated to three facts surrounding the search of his car: "the exact nature of the military base" on which the events occurred, the credibility of Morgan, and the independent corroboration of Morgan's "tip" by the military police.

*Strickland* held that the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694, 104 S.Ct. at 2068. Because the facts stipulated to by counsel could not have affected the suppression ruling, Vassiliou's ineffective assistance claim is without merit. First, the exact nature of the military base is relevant only to whether the "closed" nature of the base by itself justifies a warrantless search. *See United States v. Burrow*, 396 F.Supp. 890, 898 (D.Md.1975). Because the search in this case was justified under the wholly distinct automobile exception, *see supra*, whether the base was "closed" is irrelevant.

■ Second, Morgan's veracity is not an issue in this case. The question before Chief Judge Brieant was whether the military police reasonably relied on the information provided by Morgan *at the time* of the search. *See United States v. Ross*, 456 U.S. 798, 808, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 80 (1964). Morgan's ability to withstand cross-examination or to persuade a trier of fact at a subsequent hearing is irrelevant.

■ Finally, as we have held, the military police did not have to make any "independent corroboration" of Morgan's tip. The objective facts known to the police sufficiently corroborated Morgan's story, and an additional investigation was therefore unnecessary.

■ Accordingly, we hold that Vassiliou was not deprived of effective assistance of counsel. Because Chief Judge Brieant also correctly refused to suppress the gun found in Vassiliou's car and Vassiliou's admissions as to ownership and lack of a

permit were not the fruits of an illegal search, we affirm.