UNITED STATES of America

v.

Patrick UTER, Defendant.

No. 90 Cr. 278 (RWS).

United States District Court,
S.D. New York.

Aug. 2, 1990.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City, for U.S.; Michael Pinnisi, Asst. U.S. Atty., of counsel.

Michael M. Maloney, New York City, for defendant.

## OPINION

SWEET, District Judge.

Pursuant to an amended motion filed June 29, 1990 in *United States v. Patrick Uter*, 90 Cr. 278, defendant Patrick Uter ("Uter") has moved for a determination of whether the search of his person and knapsack was lawful and the subsequent search of his car trunk and seizure of the sum of $22,500.00 was in violation of the Fourth Amendment. On the basis of facts established at a hearing and for the reasons set forth below the motion to suppress is denied.

### Prior Proceedings

By request of the parties the motion was adjourned until July 27, 1990 and a hearing was set for July 31. The hearing was postponed to 9:30 on August 1, 1990 to determine both the audibility of the government's tape allegedly between Uter and a confidential informant and to establish the facts surrounding the arrest and search of Uter's car. Both Special Agent Robert Barber ("Barber") and Uter testified at the hearing.

### Findings of Fact

On May 3, 1990, Barber observed Uter enter a bar accompanied by a confidential informant ("CI") who had represented previously that Uter was interested in purchasing a substantial quantity of cocaine. After engaging in a narcotics transactions conversation with agents in the bar, Uter left the bar and walked to his automobile parked across the street from the entrance of the bar. Barber observed Uter from the moment he left the bar. As Uter left the bar the CI gave the Special Agents a pre-arranged signal which indicated that Uter had agreed to purchase narcotics during the conversation in the bar.

To enter the car Uter unlocked the driver's seat, entered the car, withdrew the duffle bag, popped the trunk open and emerged from the driver's seat side of the car. The agents converged on the car, yelled "freeze," and Uter was searched and forced against the trunk thus closing the trunk. The search of the duffle bag revealed it to be empty, and the frisk of Uter produced nothing.

One of the agents, realizing that the trunk had been shut, entered the car from the passenger side and triggered the latch to reopen the trunk. In the trunk was a bag containing a large amount of United States currency of mixed denominations, later determined to total 22,500.

A special agent advised Uter of his rights at the time of his arrest. Uter made no statements to the agents between the time he was place under arrest and the time that he was advised of his constitutional rights.

### Probable Cause to Arrest

■ The agents had probable cause to arrest Uter and Uter does not contest that probable cause existed. The DEA Agents had cause to believe that Uter agreed to a narcotics transaction just before his arrest based upon the information provided by the CI which led to the May 3, 1990 meeting, the DEA surveillance of the discussion in the bar, and the CI's use of the pre-arranged arrest signal in conjunction with Uter's approach of his vehicle. The totality of circumstances was sufficient to support

probable cause to arrest. *See United States v. Cruz*, 834 F.2d 47, 51 (2d Cir. 1987), *cert. denied*, 484 U.S. 1077, 108 S.Ct. 1056, 98 L.Ed.2d 1018 (1988).

Because the arrest was lawful, the DEA agents had a right to conduct a thorough search incident to that arrest to ensure their safety and to secure all evidence in the immediate vicinity. *See Michigan v. Long*, 463 U.S. 1032, 1049 n. 14, 103 S.Ct. 3469, 3481 n. 14, 77 L.Ed.2d 1201 (1983); *California v. Carney*, 471 U.S. 386, 395, 105 S.Ct. 2066, 2071, 85 L.Ed.2d 406 (1985). The search of both Uter and his duffle bag was lawful and also provided additional probable cause to believe that evidence of the alleged reverse narcotics transaction, in this case a substantial sum of money, would be in the car.

### Probable Cause to Search the Car

The search of Uter's car trunk was without warrant and without consent. Nonetheless, under the "automobile exception" to the Fourth Amendment, when "supported by probable cause ... a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained." *United States v. Ross*, 456 U.S. 798, 809, 102 S.Ct. 2157, 2164–65, 72 L.Ed.2d 572 (1982). Furthermore, "if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 825, 102 S.Ct. at 2173.

This automobile exception has been applied flexibly, even when the vehicle is not immediately mobile. *See California v. Carney*, 471 U.S. at 391, 105 S.Ct. at 2069 ("lesser expectation of privacy warrants application for exception"). For example, the exception has been applied to locked car trunks, sealed packages within car trunks, closed compartments under the dashboard, the interior of a vehicle's upholstery, to sealed packages inside a trunk, and to parked motor homes. *Id.* at 391–93, 105 S.Ct. at 2069–70. In addition to the ready mobility of automobiles, the exception has been justified on the rationale that there is a lesser expectation of privacy for an automobile subject to "pervasive schemes" of regulation on the roads.

This automobile exception to the Fourth Amendment is well-established in this circuit. "When police officers have probable cause to search an entire vehicle, they may conduct a warrantless search of every part of the vehicle and its contents, including all containers and packages in the vehicle." *United States v. Cruz*, 834 F.2d at 51. *See also United States v. Paulino*, 850 F.2d 93, 95 (2d Cir.1988) (recognizing automobile exception); *cert. denied*, — U.S. ——, 109 S.Ct. 1967, 104 L.Ed.2d 435 (1989); *United States v. Vassiliou*, 820 F.2d 28, 30 (2d Cir.1987) ("law enforcement officials may conduct a warrantless search of a movable vehicle when they have probable cause to believe it contains contraband or evidence of a crime"); *United States v. Benevento*, 836 F.2d 60, 67 (2d Cir.1987) (even where no formal arrest, if officer could have arrested and probable cause existed to search the automobile, search was valid); *United States v. Monsalve*, 728 F.Supp. 212, 218 (S.D.N.Y.1990) (recognizing automobile exception).

Uter contends that the automobile exception is not triggered here because the car was already stopped. Nonetheless, the car may already be parked and need not be "stopped" in travel to trigger the automobile exception. *See Carney*, 471 U.S. at 392, 105 S.Ct. at 2069–70 (exception applies to *parked* mobile home).

Furthermore, Uter's reliance on *United States v. Fafowora*, 865 F.2d 360, 362 (D.C.Cir.), *cert. denied*, — U.S. ——, 110 S.Ct. 98, 107 L.Ed.2d 62 (1989), for the proposition that an arrestee leaving a car may not trigger the automobile exception is misplaced. Uter confuses the *Belton* line of cases concerning searches incident to a lawful arrest with the automobile exception. In *Fafowora*, the D.C. Circuit Court held that the rationale of the *Belton* line of cases was not triggered and that the framework of *Chimel* applies instead to the search incident to the arrest of the *Fafowora* defendants. *Id.* The *Fafowora* facts differ critically from the instant case in that the arrestees there had already

walked away from their automobile, and the arrestees, *not the automobile*, were suspected of "counter-surveillance" participation in a heroin purchase. Here, on the contrary, Uter was emerging from his car when told to "freeze" and there existed probable cause to suspect that *the car* contained evidence of the narcotics transaction. Moreover, if agents suspect the car contains drug-money, the occupant need not be seated in the car to trigger the automobile exception. *See United States v. Walker*, 900 F.2d 1201, 1203 (8th Cir. 1989).

Uter's conduct, the driving of the car to the bar, the departure from the bar to the car, the entering of the car to retrieve the duffle bag, the popping of the trunk, and finally, the agent's signal and the absence of the money on Uter's person or in the bag all gave probable cause to believe that Uter's vehicle contained evidence of the narcotics transaction. Accordingly, the search is valid and the motion to suppress the evidence found pursuant to the lawful search is denied.

It is so ordered.