UNITED STATES of America, Appellee,

v.

Francisco DELOS–RIOS and Roberto Garcia-Yepes, Defendants-Appellants.

Nos. 595, 748, Dockets 80–1364, 80–1366.

United States Court of Appeals, Second Circuit.

Argued Dec. 31, 1980.

Decided Feb. 20, 1981.

Certiorari Denied April 27, 1981. See 101 S.Ct. 2024, 2025.

Paul E. Warburgh, Jr., New York City, for appellant Delos-Rios.

Peter J. Fabricant, Brooklyn, N. Y., for appellant Garcia-Yepes.

Judith Pierce, Asst. U. S. Atty., E. D. N. Y., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty. for the E. D. N. Y., Brooklyn, N. Y. and Jane Simkin Smith, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before TIMBERS and NEWMAN, Circuit Judges, and EGINTON, District Judge.*

EGINTON, District Judge:

Appellants Francisco Delos-Rios and Roberto Garcia-Yepes appeal from judgments of conviction entered on guilty pleas in the United States District Court for the Eastern District of New York, Eugene H. Nickerson, *District Judge*, for possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Their pleas of guilty were entered pursuant to a court-approved agreement preserving the right to appeal certain decisions to this Court. On this appeal, appellants challenge their convictions on the ground that Judge Nickerson erred in denying their motions to suppress a brown paper bag containing one kilogram of cocaine found in their car.

For the reasons below, we affirm.

## I.

On November 6, 1979, Immigration and Naturalization Service (INS) Inspectors Edmund Bourke and William Kerrins received information from an informant concerning a ring of 15–20 illegal Colombian aliens who were involved in the distribution of cocaine in the New York metropolitan area. The Inspectors had worked with this informant, a Colombian national, for approximately one year. On a number of prior occasions, this informant had provided the Inspectors information which led to successful INS investigations. The informant told Inspector Bourke that some of the persons involved in the ring were named "Parra",

"Hugo", and "Gloria"; neither of the appellants was named by the informant.

The Inspectors asked the informant to try to develop more information, and on November 9, Inspectors Kerrins and Bourke again met with the informant, this time in his apartment. The informant told the inspectors that on the previous evening, in the vicinity of a bar in Queens, he had witnessed the transfer of two attache cases for a suitcase which he believed contained forty pounds of cocaine, based on a conversation which he had overheard. The informant stated that Parra removed the suitcase from a vehicle bearing Florida license plates and carried it to his car, a white Ford. The informant stated further that Parra had bragged later that the suitcase contained forty pounds of cocaine. Inspectors Kerrins and Bourke transmitted this information to Drug Enforcement Administration (DEA) Agent John Featherly.

Later that evening, at approximately 9:30 p. m., a joint INS/DEA investigation commenced with the surveillance of Parra's white Ford, which was found parked at 37th Avenue and 93rd Street in Queens. The agents observed Parra and two other males enter the car, whereupon the three then proceeded to Cliffside Park, New Jersey. Upon reaching Cliffside Park, Parra, who was driving, stopped at a Polish-American bar located at John and Walker Streets. Parra's two passengers exited the car and entered the bar, while Parra, followed by Inspector Bourke, continued on to a private residence at 271 John Street. His companions remained in the bar for only a few moments; thereafter, they walked to the corner, waited ten minutes, and then entered the house at 271 John Street at separate intervals of three minutes. Inspector Bourke parked his van directly across the street from 271 John and undertook surveillance of the area from his van with a pair of binoculars.[1] The van was situated approximately 80–85 feet from the

---

* Of the District of Connecticut, sitting by designation.

1. Since all of the activities observed through the binoculars occurred on the street, this case involves no claim of enhanced viewing into premises like a home, where there exists a legitimate expectation of privacy. *See United States v. Taborda*, 635 F.2d 131 (2d Cir., 1980).

house and 35–40 feet from the parking area in front of the house.

At approximately midnight, Bourke observed a 1972 Buick arrive and park in front of the house at 271 John. Using his binoculars, Bourke observed three persons, two males and one female, subsequently identified as appellants Garcia-Yepes and Delos-Rios and codefendant Marcia Guzman Restrepo, get out of the car, look under the hood, and then enter the house; none of the three was seen carrying any packages. During the next forty-five minutes Garcia-Yepes and Delos-Rios came out of the house three times to check under the hood, apparently working on some malfunction.

Then, at about 12:45 a. m., the three left the house and proceeded to the Buick. With the aid of his binoculars, Bourke observed Garcia-Yepes carrying a large brown paper bag in an "unusual" manner, and walking eight to ten feet ahead of his companions. Just as Garcia-Yepes reached the car, however, another car, unrelated to the investigation, turned down John Street. As soon as Garcia-Yepes saw this car turn into the street, he ran to the wall of an adjoining house, dropped the brown paper bag, and then ran back to the Buick to await the passage of this apparently unexpected vehicle. Meanwhile, both Delos-Rios and Restrepo "froze" in their respective positions near the car. As soon as the car passed, Garcia-Yepes retrieved the bag and all three got in the Buick and left the John Street area. Bourke radioed these observations to Kerrins and Featherly, who proceeded to follow the Buick.

Kerrins and Featherly followed the Buick from New Jersey to Queens. When it came to a stop at 38th Street and Parsons Boulevard, the agents pulled their car alongside. As Delos-Rios exited from the driver's side, Inspector Kerrins, displaying his credentials, approached the vehicle and identified himself as an immigration officer. In Spanish, he asked Garcia-Yepes and Restrepo, who were in the back seat, to get out of the car. As the three of them stood on the street by their car, Kerrins asked them, in Spanish, whether they had appropriate papers to prove their legal presence in the country. Garcia-Yepes responded that he had no such papers and was immediately placed under arrest. Delos-Rios and Restrepo admitted that they were illegal aliens and they were also arrested. Both Delos-Rios and Garcia-Yepes were then handcuffed.

A pat down search for weapons was performed; DEA Agent Ihur Nowowenuke, who was then on the scene, found a fully-loaded .22 caliber pistol in Restrepo's purse. She admitted ownership of the weapon. Restrepo, who was not handcuffed, was asked whether there were any guns in the car, to which she responded "no." Nevertheless, Agent Featherly searched the car, apparently looking for additional weapons. On the back seat, leaning against Restrepo's poncho, was an open brown paper bag similar to that which Garcia-Yepes had previously been observed carrying from the house at 271 John Street. Agent Featherly, leaning into the car, could see inside the paper bag. Through its five to six inch opening, he observed packages containing a white powdery substance. Featherly seized the bag and, by field-testing, determined that the substance was cocaine. Appellants and Restrepo were then rearrested for violations of the narcotics laws. Since a crowd had gathered to watch the arrest, the agents secured the car and then removed the three to the DEA regional office in Manhattan. There they were interviewed in Spanish by Inspector Kerrins. Each denied knowledge of the bag of cocaine found in the car and claimed that they had just come from an apartment in Manhattan.

Appellants challenge the initial stop and the search of the car as violative of their fourth amendment rights. They claim that the agents did not have reasonable suspicion for stopping them initially, and that even if there were grounds for this initial minimal intrusion, the agents were not empowered to conduct a warrantless search of the car under any of the recognized exceptions to the warrant requirement.

## II.

It is well-settled that a law enforcement officer may, in certain circumstances, stop and question an individual to investigate possible criminal behavior where the officer has a reasonable suspicion, based on specific, objective, and articulable facts, that the individual is involved in criminal activity. *Brown v. Texas*, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979); *Terry v. Ohio*, 392 U.S. 1, 20–21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968); *United States v. Gomez*, 633 F.2d 999, 1004 (2d Cir. 1980); *United States v. Buenaventura-Ariza*, 615 F.2d 29, 33 (2d Cir. 1980).

In determining whether the facts available to law enforcement officers at the time of a stop support a reasonable suspicion, two basic principles must be kept in mind. First, the circumstances surrounding the stop must be viewed as a whole, not as discrete and separate facts. *United States v. Vasquez*, 612 F.2d 1338, 1343 (2d Cir. 1979); *United States v. Price*, 599 F.2d 494, 501 (2d Cir. 1979). Second, these circumstances "are to be viewed through the eyes of a reasonable and cautious police officer on the scene guided by his experience and training." *United States v. Price, supra*, at 501, *quoting, inter alia, United States v. Oates*, 560 F.2d 45, 61 (2d Cir. 1977); *United States v. Magda*, 547 F.2d 756, 758 (2d Cir. 1976), *cert. denied*, 434 U.S. 878, 98 S.Ct. 230, 54 L.Ed.2d 157 (1977).

In this case, the agents' stop of Delos-Rios and Garcia-Yepes was based on the following facts. On November 9th, the agents had received detailed information from a reliable informant that Parra, the leader of a ring of illegal Colombian aliens involved in the distribution of cocaine, had received forty pounds of cocaine the previous evening. That night the agents located Parra and two companions in the car in which the informant had seen Parra place the suitcase purportedly containing the cocaine. The agents followed Parra and his companions to Cliffside Park, New Jersey and observed them engage in an apparent effort to avoid being seen entering the house at 271 John Street together. Two hours later Inspector Bourke observed Delos-Rios, Garcia-Yepes, and Restrepo arrive at the same house, enter empty-handed, and leave forty-five minutes later, with Garcia-Yepes carrying a brown paper bag. He also observed Garcia-Yepes' unusual and furtive behavior in getting rid of the bag when the unexpected car appeared, the behavior of Delos-Rios and Restrepo freezing in place, and Garcia-Yepes' quick retrieval of the bag after the car passed. Taken as a whole, and viewed through the eyes of a trained and experienced officer, these facts, together with the rational inferences to be drawn from them, amply support the reasonableness of the agents' suspicion that appellants were illegal aliens and engaged in narcotics trafficking; the investigatory stop was therefore proper.

Appellants nevertheless argue that there was not a sufficient objective and articulable basis for the agents' suspicions since the informant did not specifically mention their names or link them to narcotics trafficking or illegal aliens, they were not observed in an area where there was a high incidence of narcotics dealings or the presence of illegal aliens, and they did not engage in evasive driving. This contention is without merit. While this Court has in the past held that the presence of these factors *may*, in an appropriate case, form the basis for reasonable suspicion (*see, e. g., United States v. Vasquez*, 634 F.2d 41, 43 (2d Cir., 1980); *United States v. Oates, supra*, at 59–60; *United States v. Magda, supra*, at 758), such factors have never been deemed determinative or exclusive criteria, absence of which would vitiate the reasonableness of the suspicion. Each case must necessarily be judged on its own facts. We conclude that the facts in the present case provided a reasonable basis for a suspicion that Delos-Rios and Garcia-Yepes were engaged in criminal activity.[2]

---

**2.** Appellants also contend that their conduct was susceptible of an innocent interpretation. However, the mere fact that conduct is as consistent with innocence as with guilt does not preclude such conduct from providing the basis for a reasonable suspicion of criminal activity.

Appellants contend that the search of the car and the seizure of the brown paper bag cannot be sustained under the automobile exception to the warrant requirement since there was an absence of exigent circumstances. According to appellants, once the car was stopped in a legal parking area and they had been arrested and handcuffed, the car was effectively immobilized and there were no exigent circumstances justifying a search without a warrant.

Although we cannot agree with appellants' assessment of the situation in view of the facts that a crowd had formed, access to the car was not restricted, and the car might have contained weapons, contraband, or both, we need not, as another panel of this Court recently recognized, "make a final determination of the exigency of the situation since the search of the car and the seizure of the bag was permissible under the automobile exception to the warrant requirement even assuming that the car and its contents were no longer mobile." *United States v. Mannino*, 635 F.2d 110, 115 (2d Cir., 1980), *citing United States v. Mackey*, 626 F.2d 684, 685–86 (9th Cir. 1980). As the *Mannino* panel explained, "[t]he reduced expectation of privacy that attaches to automobiles [is] sufficient to empower the police lawfully to conduct a warrantless [search and seizure]." *United States v. Mannino, supra*, at 115. Of course, once in the car, Agent Featherly was justified in seizing and searching the partially-opened paper bag inasmuch as the bag was not protected by any independent expectation of privacy. *Id.* at 115; *United States v. Ochs*, 595 F.2d 1247, 1254 (2d Cir.), *cert. denied*, 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1979).[3]

The judgments of conviction are affirmed.

See *United States v. Buenaventura-Ariza, supra*, at 37; *United States v. Price*, 599 F.2d 494, 502 (2d Cir. 1979).

**3.** In view of our conclusion that the search was justified under the automobile exception to the

warrant requirement, we need not consider the Government's alternative argument that the search was proper as incident to the arrest. See *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969).