UNITED STATES of America, Appellee,

v.

MOSKOWITZ, et al., Defendants,

Appeal of Jeffrey Allen TOFFLER,
Defendant-Appellant.

No. 1409, Docket 89–1134.

United States Court of Appeals,
Second Circuit.

Argued Aug. 15, 1989.
Decided Oct. 13, 1989.

Brian W. Shaughnessy, Washington, D.C. (Shaughnessy, Borowski & Gagner, Washington, D.C., of counsel), for defendant-appellant.

Bonnie S. Klapper, Asst. U.S. Atty., Brooklyn (Andrew J. Maloney, U.S. Atty. E.D. New York, David C. James, Asst. U.S. Atty., Brooklyn, of counsel), for appellee.

Before MINER and ALTIMARI, Circuit Judges, and KELLEHER, District Judge.*

MINER, Circuit Judge.

Defendant Jeffrey Allen Toffler appeals from a judgment of conviction entered in the United States District Court for the Eastern District of New York (Dearie, J.) after a jury trial. Toffler was convicted of knowingly and recklessly causing the transportation in air commerce of hazardous materials, in violation of 49 U.S.C.App. § 1472(h)(2) (1982) and 18 U.S.C. § 2 (1982) ("Count Three"); willfully violating regulations promulgated by the Secretary of Transportation by causing the transportation in air commerce of hazardous materials, in violation of 49 U.S.C.App. § 1809(a)(1) & (b) (1982) and 18 U.S.C. § 2 ("Count Four"); and possession of cocaine, in violation of 21 U.S.C. § 844 (1982 & Supp. V 1987) and 18 U.S.C. § 2 ("Count Five"). For the reasons that follow, we affirm the convictions and remand to the district court solely for resentencing.

## BACKGROUND

Many of the facts underlying this case are detailed in our recent decision, *United States v. Moskowitz*, 883 F.2d 1142 (2d Cir.1989). We recount only those facts relevant to Toffler's appeal.

Toffler and four companions—Janelle Lillequist, who was not charged in this case, and co-defendants Richard Moskowitz, Christine Dalfonso and Denise Brookshire—were discovered to possess cocaine and various drug paraphernalia, including several canisters of butane and nitrous oxide, while aboard an Eastern Airlines flight from John F. Kennedy Airport in New York to Miami, Florida. The airplane tickets of all five travellers were in the name of Toffler. Prior to the flight, Special Agents Joseph Reynolds of the U.S. Customs Service and Richard Shields of the Drug Enforcement Administration, who coincidentally were scheduled to take the

same flight, saw the group together in the check-in line and noticed that Toffler was very disheveled and Moskowitz appeared intoxicated from either drugs or alcohol.

During the flight, Reynolds observed Toffler, who was seated with Lillequist in first-class, walk past him carrying a red bag and then return to his seat moments later without the bag. Flight Attendant Cynthia Mitchell testified via videotaped deposition that she saw Toffler walk from the first-class compartment to row fourteen, where Moskowitz, Dalfonso and Brookshire were sitting, take from his pocket a small plastic bag containing white powder and hand the plastic bag to Dalfonso.

Brookshire pled guilty to a misdemeanor. Pursuant to a cooperation agreement with the government, she testified that Dalfonso awakened her and said that Toffler wanted her to "cook up." After Dalfonso placed some cocaine on Brookshire's lap, Brookshire took a "crack" pipe and went to the lavatory. She returned to her seat with a quantity of crack, a substance derived from "cooking" cocaine, and noticed that Moskowitz was not in his seat. Moskowitz soon was discovered by Reynolds, Shields and a flight attendant, smoking crack in a lavatory. A variety of drug paraphernalia, including a small butane blow-torch, was found in the possession of Moskowitz, and additional narcotics-related glassware was uncovered behind the wall panels of the lavatory by the flight attendant. Moskowitz then was placed under arrest. Because of the explosive nature of the butane gas that was discovered, the airplane was forced to return to Kennedy Airport.

The airplane landed safely at the airport. Before disembarking from the airplane, and upon receiving appropriate consents, Reynolds searched Dalfonso, Brookshire and Toffler and their carry-on luggage. In the red bag that Toffler had delivered to Dalfonso during the flight, Reynolds found drug paraphernalia used to make and smoke crack, including a butane microtorch. A manila envelope containing cocaine was found in Toffler's possession.

---

* Hon. Robert J. Kelleher, United States District Judge for the Central District of California, sitting by designation.

Toffler immediately was arrested and taken to the Port Authority police station.

At the police station, a pat-down search of Toffler revealed a plastic bag filled with cocaine that had been hidden in his sock. After Toffler consented orally—he refused to sign a consent form—his luggage was searched and one canister of butane was found. This canister was the only hazardous material found in Toffler's possession. Twenty-four canisters of nitrous oxide and nine canisters of butane fuel were found in the checked luggage of Toffler's companions; most of these canisters were in Brookshire's bags.

At trial, Brookshire testified that the day before the group had departed for Florida, she and Moskowitz had brought cocaine free-basing paraphernalia, including about four canisters of butane, to Toffler's house. The other canisters were taken from Toffler's house and all were to be used by Toffler and his associates to free-base cocaine in Florida. During the presentence interview, Brookshire stated that the butane and nitrous oxide belonged to all four co-defendants and that they all had discussed packing the canisters.

Supervisory Special Agent Walter Sheppard of the Federal Aviation Authority (FAA) testified at trial that notices advising passengers that federal law prohibits the transportation of hazardous materials were posted at the doorways of the entrance to the Eastern Airlines terminal at Kennedy Airport and at the ticket counter and gate used by Toffler and his companions. The notices indicated that the prohibited materials included explosives, compressed gases, flammable liquids and flammable solids. *See* 49 C.F.R. § 175.25(a)(1) (1988).

On March 13, 1988, nearly two weeks after Toffler's arrest and while Toffler was released on bail, Officer John Timochco of the Port Authority Police responded to a call about a "suspicious bag" found at Newark Airport. At trial, Timochco testified, over Toffler's objection, that in the bag he found drug paraphernalia generally used to free-base cocaine, eight grams of cocaine, men's and women's clothing, and documents bearing the name "Jeffrey Toffler," including some related to Toffler's detention and arrest. The district court instructed the jury to consider the testimony as evidence only of Toffler's knowledge and intent, not his propensity to commit the offenses with which he was charged.

In defense, Toffler neither presented witnesses nor testified. On November 14, 1988, the jury found Toffler guilty of the offenses charged in Counts Three, Four and Five. At Toffler's sentencing on March 3, 1989, the court, after entertaining extensive arguments and submissions from defense counsel, adopted the Sentencing Guidelines calculations of the Probation Department, resulting in a base level of eight for each of Counts Three and Four, the hazardous materials violations. *See* Federal Sentencing Guidelines, 18 U.S.C.A. App. (West Supp.1989) ("Sentencing Guidelines" or "Guidelines"). Because the offenses resulted in disruption of a public utility, four points were added to each of those Counts, pursuant to Sentencing Guidelines § 2Q1.2(b)(3). As to Count Five, the possession of cocaine offense, the court adopted a base offense level of six. The court declined to deduct two points for acceptance of responsibility, finding that Toffler had not "freely and affirmatively acknowledged his responsibility for the full range of activities that he and his traveling companions were engaged in."

Toffler was sentenced on Counts Three and Four to concurrent eighteen-month terms of imprisonment, to be followed by a three-year period of supervised release. On Count Five, he was sentenced to a twelve-month term of imprisonment, to run concurrently with the eighteen month terms, and a one-year period of supervised release, to run concurrently with the supervised release imposed for Counts Three and Four. As to all three counts, he was also ordered to pay $10,125 in fines and a special assessment.

On appeal Toffler raises principally five issues. He challenges his sentence, claiming that the district court applied the wrong Sentencing Guidelines section and erred in increasing his base offense level

for disrupting a public utility. He further contends that the court erred in refusing to credit him with having accepted responsibility for his activities. Toffler argues also that the court improperly admitted into evidence the bag containing free-basing paraphernalia found at Newark Airport. He asserts that the court should have suppressed evidence found on his person and in his luggage. Finally, he claims that there was insufficient evidence of his knowledge of the regulations governing hazardous materials to support his convictions under Counts Three and Four.

## DISCUSSION

### 1. *Sentencing Guidelines*

■ Toffler raises several arguments concerning the enhancement of his sentence for the violations enumerated in Counts Three and Four. He claims that section 2Q1.2(b)(3) of the Sentencing Guidelines deals only with offenses related to contamination of the environment and so cannot apply to his activities. Our decision in *Moskowitz*, however, clearly establishes that the district court was correct in applying section 2Q1.2(b)(3). *Moskowitz*, 883 F.2d at 1152–53.

■ Toffler further argues that while the use of butane by Moskowitz and Brookshire might have constituted a disruption of a public utility, his own conduct did not cause any such disruption. However, under section 1B1.3(a) of the Guidelines, the sentencing court may consider as specific offense characteristics:

(1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense [and]

. . . .

■ all harm or risk of harm that resulted from the acts or omissions specified in subsection[ ] (a)(1) . . . if the harm or risk

was caused intentionally, recklessly or by criminal negligence, and all harm or risk that was the object of such acts or omissions.

The Commentary to section 1B1.3 indicates that "[c]onduct 'for which the defendant is otherwise accountable,' as used in subsection (a)(1), includes conduct that the defendant counseled, commanded, induced, procured, or willfully caused."

Toffler instructed Dalfonso to tell Brookshire to "cook" the cocaine on the plane. He played a significant role in the transportation of the butane. These activities undoubtedly contributed to the danger to which the Eastern Airlines aircraft was subjected, a danger evidenced by the pilot's decision to return the aircraft to its airport of departure. Even under a clear and convincing evidence standard that Toffler urges, *but cf. United States v. Weinberg*, 852 F.2d 681, 685 (2d Cir.1988) (where Sentencing Guidelines not used, preponderance of evidence is standard of proof for sentencing fact-finding), his conduct was shown to have fallen within the purview of the pertinent enhancement provision of the Guidelines. The district court properly increased Toffler's offense level. *See Moskowitz*, 883 F.2d at 1153–54.

### 2. *Acceptance of Responsibility*

■ Toffler asserts that the district court should have reduced his base offense level by two points because he accepted responsibility for his activities by acknowledging that he possessed cocaine and a single butane canister. He claims that if he was to accept responsibility for transporting all the butane, as ostensibly the district court required for a reduction of his offense level, he would be accepting responsibility for the conduct of others and that would entail making a false statement. In accordance with our opinion in *Moskowitz*, we find no merit in Toffler's argument and "see no basis for disturbing the district court's determination that [Toffler] was not entitled to a two level reduction." *Id.* at 1155; *see also United States v. Thomas*, 870 F.2d 174, 176 (5th Cir.1989) (sentencing judge's assessment of defendant's accept-

ance of responsibility is a factual question and "enjoys the protection of the 'clearly erroneous' standard").

### 3. *The Bag from Newark Airport*

■ Toffler argues that the bag discovered at Newark Airport improperly was introduced to demonstrate his criminal propensity and that, despite the court's limiting instruction, its admission was prejudicial. However, as the district court found, the bag was admitted not to establish Toffler's criminal propensity, but to demonstrate knowledge and intent by showing that he engaged in similar conduct less than two weeks after his arrest. Indeed, the bag was admitted into evidence only after Toffler contended that he had been unaware that Brookshire had placed the canisters in the checked luggage and that he had not been involved in any of the free-basing activities on the airplane. The probativeness of the evidence properly was weighed against its potential for unfair prejudice, *see* Fed.R.Evid. 403, and the court gave an appropriate limiting instruction, both during and at the close of the trial, *see United States v. Tussa*, 816 F.2d 58, 68 (2d Cir.1987). The evidence properly was admitted as similar act evidence, *see* Fed.R.Evid. 404(b); *see also United States v. Peterson*, 808 F.2d 969, 974–76 (2d Cir. 1987).

### 4. *Suppression of Evidence*

■ Toffler argues that the government did not show that there was "sufficient probable cause" to justify either the seizure from him of the envelope containing cocaine or his arrest, which led to the discovery of drugs and paraphernalia on his person and in his luggage. He contends also that his consent to the search of his body and luggage was not obtained voluntarily because he felt intimidated by the presence of the federal agents and by their accusations of criminal conduct. Thus, he urges that the seized evidence should have been suppressed.

However, because agents Reynolds and Shields had a " 'reasonable suspicion, based on specific, objective and articulable

facts,' " *United States v. Barlin*, 686 F.2d 81, 86 (2d Cir.1982) (quoting *United States v. Delos–Rios*, 642 F.2d 42, 45 (2d Cir.), *cert. denied*, 451 U.S. 941, 101 S.Ct. 2025, 68 L.Ed.2d 330 (1981)), that Toffler was engaged in criminal activity, the investigatory detention was lawful, even if consent had not been obtained. *See Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983). The agents saw all the defendants together at the airport prior to boarding and observed Toffler's disheveled appearance at that time. Reynolds witnessed some of the circumstances of the transfer of the red bag during the flight, and discovered Moskowitz free-basing in the airplane lavatory.

■ Furthermore, the district court's determination that Toffler's consent was voluntary and not the product of duress or coercion is not clearly erroneous. *See United States v. Arango–Correa*, 851 F.2d 54, 57 (2d Cir.1988). The evidence indicates that only Reynolds solicited Toffler's consent, that Reynolds spoke with Toffler in a civil manner and that Toffler, as the district court noted, was "entirely rational, cogent [and] ... competent." *See United States v. Gaviria*, 740 F.2d 174, 182–83 (2d Cir.1984).

### 5. *Sufficiency of the Evidence*

■ Toffler argues that the government failed to prove beyond a reasonable doubt that he knew or was aware of the FAA regulations prohibiting the transportation of hazardous materials, or that he was "aware of or recklessly or willfully violated such regulations." Based on the evidence in the record, however, it is clear that there was sufficient notice that the type of hazardous materials that Toffler and his party brought on board the plane was prohibited. *See Moskowitz*, 883 F.2d 1149–51. Testimony indicated that warning signs were posted as required throughout the airport in places where Toffler easily could have seen them. *See* 49 C.F.R. § 175.25(a). Moreover, even though the posted regulations may not have referred specifically to butane, *see id.*, the posted notices did warn that federal law prohibits bringing flamma-

ble matter on board an airplane. Butane, a flammable material, clearly is forbidden. Not surprisingly, the regulations as published prohibit butane specifically. *See id.* § 172.101.[1] As we noted in *Moskowitz*, a "reasonable jury could conclude that Brookshire's testimony, together with all the evidence of the group's actions, revealed an awareness that the canisters of butane themselves were items that needed to be concealed from airport authorities." *Moskowitz*, 883 F.2d at 1150.

Toffler argues that the FAA regulations exempt from the overall prohibition the transport of less than seventy-five ounces of hazardous materials. That exception, however, applies only to medicinal and toilet articles in carry-on baggage and to certain smoking materials carried on the traveller's person. 49 C.F.R. § 175.10(a)(4) & (10); *see id.* § 175.25(a)(1). Obviously, "certain smoking materials" does not include small blow-torches that are fueled by combustible materials and used for cooking cocaine. *See Moskowitz*, 883 F.2d at 1150.

Finally, Toffler's argument that the jury was not instructed that the government had to prove that the canisters actually contained butane and that, indeed, the canisters may have been empty is without foundation. The government may prove the nature of an illicit substance by circumstantial evidence and need not perform a chemical analysis. *United States v. Clark*, 613 F.2d 391, 405–06 (2d Cir.1979), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980). Further, Brookshire's testimony indicated strongly that the canisters contained butane; she testified that Toffler told her to be certain to pack enough butane for the trip so that they would not have to buy more in Florida, and that she actually used one of the butane canisters to cook crack on the airplane. As well, by finding that the defendants had transported hazardous materials, the jury implicitly determined that the canisters had been full.

Toffler has not carried his "very heavy burden" of showing that the proof was insufficient to convict him. *See United States v. Nusraty*, 867 F.2d 759, 762 (2d Cir.1989) (citations omitted). We have no hesitation in saying that "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

### 6. *Remaining Issues*

We have considered Toffler's remaining contentions and find them to be meritless. However, while Toffler has not complained that Count Three is a lesser included offense of Count Four, the government concedes that it is and does not object to a remand for the correction of the judgment accordingly. In fact, we remanded for an identical purpose in *Moskowitz*. *See Moskowitz*, 883 F.2d at 1155.

### CONCLUSION

Toffler's sentences under Counts Three and Four are vacated. The matter is remanded to the district court with instructions to combine the convictions under Counts Three and Four and to resentence under Count Four. In all other respects, the judgment of the district court is affirmed.

---

1. We note that up to 150 pounds of compressed gaseous nitrous oxide is permitted to be transported in air commerce. *See* 49 C.F.R. § 172.101. Apparently, the district court instructed the jury that both butane and nitrous oxide were hazardous materials as a matter of law under Department of Transportation regulations. Indeed, under those regulations, nitrous oxide is considered a hazardous material, albeit one that, under certain conditions, can be transported by air. *See id.* While the charge as to nitrous oxide may have misled the jury into believing that nitrous oxide may not be transported on an airplane, defense counsel did not object to the instruction at trial. Therefore, Toffler may not assign as error the instruction. *See* Fed.R.Crim.P. 30. As well, we decline to view the misstatement as plain error. The evidence was overwhelming that Toffler transported hazardous material by air; in fact, Toffler accepted responsibility for transporting butane.