UNITED STATES of America, Appellant,

v.

Thomas E. MINER, Defendant–Appellee.

No. 403, Docket 91–1384.

United States Court of Appeals, Second Circuit.

Argued Nov. 15, 1991.

Decided Feb. 13, 1992.

John C. Charbonneau, Asst. U.S. Atty., Burlington, Vt. (George J. Terwilliger, III, U.S. Atty., Charles A. Caruso, First Asst. U.S. Atty., David V. Kirby, Chief, Crim. Div., William B. Darrow, Asst. U.S. Atty., of counsel), for appellant.

Thomas A. Zonay, Rutland, Vt. (John J. Kennelly, Carroll, George & Pratt, of counsel), for defendant-appellee.

Before VAN GRAAFEILAND,
NEWMAN and WINTER, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

The government appeals from two orders of the United States District Court for the District of Vermont (Billings, C.J.), the first of which granted Thomas E. Miner's motion to suppress evidence and the second of which denied the government's motion for reconsideration. We reverse.

On March 30, 1990, at 5:46 p.m., Miner telephoned the Brattleboro barracks of the Vermont State Police, reported that his pickup truck had been vandalized, and requested that the police come to see what had occurred. Although Miner testified at the suppression hearing that he only telephoned to report the vandalism for insurance purposes, he admitted that he made no mention of this: "I didn't say for insurance purposes. I just wanted it investigated and wanted it on report." Trooper Kraig LaPorte, with whom Miner talked, testified that he understood from the conversation that Miner wanted the vandalism investigated. Trooper LaPorte told Miner that he would be over as soon as he could. He was to meet Miner at the roadway end of Miner's 1000–foot long driveway where the truck was parked blocking the driveway. Because Miner did not have a telephone in the motorbus where he was staying, which was over a hill at the opposite end of the blocked driveway, Trooper LaPorte was to activate his cruiser's warning lights and siren when he arrived so that Miner would know he was there and could meet him.

Trooper LaPorte, accompanied by Trooper Thomas Revene, arrived at the scene of the vandalism around midnight. He acti-

vated the cruiser's warning lights and siren, but Miner, having gone to bed, did not respond. The troopers then proceeded with their investigation. They observed, among other things, that the truck's windshield and a side window had been smashed. The nature of the damage indicated that one or more objects might have been thrown into the car from the outside. In his effort to locate the possible projectiles, Trooper LaPorte reached through the shattered side window and moved a coat on the passenger's seat.

Q: And what did you do with that coat?

A: I just moved it to the side to see if I could see any items that were possibly used to break the windshield of the truck.

In so doing, LaPorte uncovered an open cardboard box containing ammunition and two handgun holsters. Finding no projectiles or other pertinent evidence, the troopers photographed the truck and concluded their investigation.

Because the troopers knew that Miner had prior felony convictions, they reported what they had seen to the Bureau of Alcohol, Tobacco and Firearms. On April 5, 1990, Agent Forrest H. LeMoine submitted an application for a warrant to search Miner's vehicles and residence, incorporating therein the facts concerning the troopers' investigation and discovery. The search pursuant to this warrant resulted in the seizure of various firearms, and Miner was indicted for alleged violations of firearm statutes.

Miner moved to suppress evidence of the firearms, arguing that the troopers had unlawfully searched his truck without a warrant and that the subsequent warrant-authorized search was a fruit of this illegality. Accepting both prongs of this argument as valid, the district court granted the motion.

In support of its holding that the troopers' investigation constituted an unlawful search, the district court cited *United States v. Mapp*, 476 F.2d 67 (2d Cir.1973) and *United States v. Smith*, 308 F.2d 657 (2d Cir.1962), *cert. denied*, 372 U.S. 906, 83

S.Ct. 717, 9 L.Ed.2d 716 (1963), in which this court discussed the government's "particularly heavy" burden of showing the voluntariness of a consent given by one who at the time was subject to actual or implied duress or coercion. This is not such a case. Miner voluntarily called the state police and told them that he wanted the vandalization of his truck investigated and on report.

■ Because of Miner's testimony that he wanted the investigation and report for insurance purposes and that he did not give the troopers consent to enter the truck, the district court held that the troopers made an unlawful search. This was error. Miner said nothing to the troopers about insurance purposes and never forbade them from entering his truck. As is true of most jural relationships, it is a person's manifest, rather than undisclosed, intention that determines his rights and obligations. *See* 9 Wigmore, Evidence § 2413, at 40 (Chadbourn rev. 1981); 1 Williston on Contracts § 21, at 42 (3d ed. 1957); *Atlantic Lines Ltd. v. American Motorists Ins. Co.,* 547 F.2d 11, 13 (2d Cir.1976).

■ We may take it as a given that vandalization of motor vehicles often involves the removal of radios and other interior appliances. It is not surprising therefore that the district court found the interior search of such a vehicle to be the "usual police procedure in an investigation request." The police officer making such inspection is performing his "community caretaking functions", *Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973), and his duty to protect the lives and property of citizens, *United States v. Markland,* 635 F.2d 174, 176 (2d Cir.1980), *cert. denied,* 451 U.S. 991, 101 S.Ct. 2332, 68 L.Ed.2d 851 (1981). There was no showing that the troopers who were following standard procedures in the instant case acted in bad faith for the purpose of investigating Miner rather than his vandalized vehicle. *See Colorado v. Bertine,* 479 U.S. 367, 372, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987); *South Dakota v. Opperman,* 428 U.S. 364, 375–76, 96 S.Ct. 3092, 3100–01, 49 L.Ed.2d 1000 (1976).

Under the circumstances, Miner had no objectively reasonable and justifiable expectation of privacy in his damaged vehicle. *See Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *United States v. Metzger,* 778 F.2d 1195, 1200 (6th Cir.1985), *cert. denied,* 477 U.S. 906, 106 S.Ct. 3279, 91 L.Ed.2d 568 (1986).

Our holding that Trooper LaPorte did not conduct an unlawful search of Miner's truck disposes of the district court's holding that the subsequent warrant search was tainted.

The district court's orders are reversed.