**UNITED STATES of America**

v.

**Thomas MUNDY, Gregory Gorman and John Busiello, Defendants.**

**No. CR 92–0485 (JBW).**

United States District Court, E.D. New York.

Nov. 12, 1992.

Andrew J. Maloney, U.S. Atty., Brooklyn, N.Y. by Margaret M. Giordano, Loretta Lynch, for U.S.

James T. Moriarty, New York City, for Mr. Mundy.

Joseph Benfante, New York City, for Mr. Gorman.

Gerald J. Di Chiara, New York City, for Mr. Busiello.

## AMENDED MEMORANDUM AND ORDER

WEINSTEIN, District Judge:

Defendants' motion to suppress evidence seized from defendant Busiello's automobile is denied. Search and seizure of the vehicle and its contents were permissible under recognized exceptions to the warrant requirement—police community caretaking and exigent circumstances.

## I. FACTS

Defendant Mundy, a hardworking trucker, had just won $5,000,000 in the Florida lottery. He quickly acquired a style of living that left him short of cash. To replenish his funds he negotiated in Florida with two Drug Enforcement Administration ("DEA") confidential informants to purchase up to thirty kilograms of cocaine to be shipped from Colombia and delivered in New York. In tape-recorded telephone conversations, Mundy told one informant that he had partners, one of whom he identified as a "mob" friend from California. Mundy boasted to the informant that an-

other partner had a black gym bag filled with cash.

To close the deal Mundy arranged to meet with one of the informants on March 25, 1992 in the lobby of the Ramada Inn at La Guardia Airport. The hotel had a busy parking lot, with cars coming and going. A major highway, the Grand Central Parkway, located nearby, had active traffic. Exactly how and where the transaction was to take place was undecided.

Mundy and co-defendant Gorman arrived at the hotel together in a rented Pontiac. Gorman, a California resident, had never been seen by the DEA agents.

The informant and Mundy continued their discussion in the informant's hotel room where their actions were secretly recorded on DEA videotape equipment. Mundy produced over $14,000 in cash but the informant demanded that Mundy first show him more cash before the cocaine was produced. Mundy agreed.

While Mundy rented a room, Gorman placed a telephone call. Gorman was overheard saying, "I'm at the Ramada. Everything is good. Bring as much as you can."

Shortly thereafter defendant Busiello entered the hotel parking lot driving a grey Porsche. Gorman approached the car and entered it. When he and Busiello exited the car, Gorman was carrying a black gym bag. A few minutes later, Mundy returned to the informant's room carrying the black bag. The informant was shown approximately $80,000 in cash from the bag and told that Mundy and his associates were ready to deal for ten kilograms of cocaine. Mundy then left the room with the bag.

Minutes later Busiello and Gorman were observed seated in the hotel bar. The black bag was hanging from Busiello's chair. Almost at once agents arrested all three defendants and seized the bag which contained $78,000 in cash. By this time it was dark, the parking lot was busy with cars and pedestrians entering and leaving and traffic was heavy on the adjacent parkway.

Because three defendants had been arrested, requiring two agents to guard each of them, there were only two agents left to guard the Pontiac and Porsche. Since the DEA agents had only known of Mundy's identity and were uncertain how the sale was to be consummated, arrest warrants for Gorman and Busiello or search warrants for the two cars could not be obtained before the arrests.

After securing the keys from Busiello and Gorman, an agent immediately drove each of the two cars to a DEA parking lot on Tenth Avenue in Manhattan. A routine standard DEA inventory search of the cars was then conducted. $14,780 in cash was found in the unlocked glove compartment of the Porsche; a cellular phone was on the floor near the front passenger seat. The phone had been used to receive the phone message from Gorman to bring cash.

Defendants move to suppress the evidence seized from the Porsche as the product of an illegal warrantless search. Current Supreme Court doctrine mandates denial of the motion.

## II. LAW

### A. Exigent Circumstances

■ There is an exception to the warrant requirement for moving vehicles. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). A "necessary difference [is recognized] between the search of a store, dwelling house or other structure ... and a search of a ship, motor boat, wagon or automobile ... because the vehicle can be moved quickly out of the locality" while the warrant is sought. *Id.* at 153, 45 S.Ct. at 285. The *Carroll* Court approved the warrantless search of an automobile based on probable cause to believe the vehicle contained evidence of a crime where the likely disappearance of the vehicle created exigent circumstances. *Id.* at 159, 45 S.Ct. at 287.

The circumstances that furnish probable cause to search an auto are often unforeseeable. "[O]pportunity to search is fleeting since a car is readily movable." *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). Where officers have probable cause to search the

entire vehicle, they may conduct a warrantless search of every part. *United States v. Ross*, 456 U.S. 798, 821, 102 S.Ct. 2157, 2171, 72 L.Ed.2d 572 (1982).

■ Exigent circumstances are determined at the time a vehicle is seized. *Chambers v. Maroney*, 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). The fact that there is no articulable danger that evidence will be lost does not preclude a finding of exigent circumstances. *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) (exigent circumstances found where defendant drove to police station for questioning, was arrested and vehicle was towed from a public parking lot and examined). When a defendant is arrested and a car may have incriminating evidence, the potential for the car's removal exists. *Id.* at 595, 94 S.Ct. at 2471. Warrantless searches of vehicles have been upheld even where the possibility of the vehicle being removed or destroyed is relatively remote. *See, e.g., Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730, *reh'g denied*, 386 U.S. 988, 87 S.Ct. 1283, 18 L.Ed.2d 243 (1967).

■ The fact that the car is immobilized does not render a warrantless search unconstitutional. *Michigan v. Thomas*, 458 U.S. 259, 261, 102 S.Ct. 3079, 3080–81, 73 L.Ed.2d 750 (1982). "[J]ustification to conduct ... a warrantless search does not ... depend upon ... an assessment of the likelihood that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant." *Id.* *See, e.g.,* exigent circumstances found: *Pinkney v. Keane*, 920 F.2d 1090, 1100 (2d Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2824, 115 L.Ed.2d 995 (1991) (car parked on public street, defendant lay in emergency room and highly improbable he would soon drive off); *United States v. Vassiliou*, 820 F.2d 28 (2d Cir.1987) (defendant parked car outside police station in guarded military outpost); *United States v. Delos–Rios*, 642 F.2d 42, 46 (2d Cir.), *cert. denied sub nom., Garcia–Yepes v. United States,* 451 U.S. 941, 101 S.Ct. 2024, 68 L.Ed.2d 330 (1981) (crowd had formed, access to immobilized car was not restricted and car might have contained weapons or contraband); *United States v. Mannino*, 635 F.2d 110 (2d Cir.1980) (crowd was gathering and agents were concerned that others might be a threat to car's security).

## B. Community Caretaking Function

■ The police are also authorized to seize an automobile not in control of its driver as part of a "community caretaking function." *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973) (warrantless search of auto towed to a garage upheld even though no probable cause existed to believe it had been involved in crime). Courts give "deference to police caretaking procedures designed to secure and protect vehicles and their contents while in police custody." *Colorado v. Bertine*, 479 U.S. 367, 372, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987). This rule is particularly important where a car would be unattended, even if legally parked, and the police have reason to believe that a suspect will be separated from his vehicle for a long period of time. *United States v. Staller*, 616 F.2d 1284, 1290 (5th Cir.), *cert. denied,* 449 U.S. 869, 101 S.Ct. 207, 66 L.Ed.2d 89 (1980) (auto's out-of-state owner had just been arrested and taken to jail and car was parked in a mall parking lot with appreciable risk of vandalism or theft). *See also United States v. Miner*, 956 F.2d 397, 399 (2d Cir.1992); *United States v. Markland*, 635 F.2d 174, 176 (2d Cir.1980), *cert. denied,* 451 U.S. 991, 101 S.Ct. 2332, 68 L.Ed.2d 851 (1981).

■ Even if the impoundment of the vehicle stems partially from an investigatory motive, the search is still valid. *United States v. Rodriguez–Morales*, 929 F.2d 780, 787 (1st Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992). If the police have probable cause to believe there is contraband in an automobile, a warrantless search is proper even after impoundment. *Chambers v. Maroney*, 399 U.S. at 52, 90 S.Ct. at 1981.

■ Where the officer's community caretaking function is justified on objective

grounds—as when the car would be easy prey for vandals—there is no need to speculate about the officer's intent. *United States v. Rodriguez–Morales*, 929 F.2d at 785. The validity of an inventory search is not vitiated by police suspicion that evidence of a crime may be found. *United States v. Feldman*, 788 F.2d 544, 552 (9th Cir.1986), *cert. denied*, 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987), citing *United States v. Prescott*, 599 F.2d 103, 106 (5th Cir.1979). Once a vehicle is lawfully in police custody, it may be searched where there is probable cause to believe it contains contraband. *United States v. Johns*, 469 U.S. 478, 484, 105 S.Ct. 881, 885, 83 L.Ed.2d 890 (1985).

■ Inventory searches conducted pursuant to standard police procedures are reasonable. *South Dakota v. Opperman*, 428 U.S. 364, 372, 96 S.Ct. 3092, 3098–99, 49 L.Ed.2d 1000 (1976). Such searches serve three important interests: 1) protection of the owner's property, 2) protection of the police and others from claims of lost possessions and 3) protection of the police from potential danger from possible guns or explosives in the car. *Id.* at 369, 96 S.Ct. at 3097. "Even if [routine] inventory [procedures are] characterized as a 'search,' the intrusion is constitutionally permissible." *Id.* at 370–71, 96 S.Ct. at 3097–98. Where police are potentially liable for property taken into custody, governmental interests justify inventory searches. *Colorado v. Bertine*, 479 U.S. 367, 372–73, 107 S.Ct. 738, 741–42, 93 L.Ed.2d 739 (1987).

### III. APPLICATION OF LAW TO FACTS

■ A warrantless search of the Porsche was appropriate. The agents properly took custody of the automobile as part of their community caretaking function. Once the defendants were arrested, the agents had no way of knowing how long the defendants would be detained. Had they left the car in the hotel parking lot, it would have been unattended for an indeterminable amount of time, at night, in a high crime area. References to "mob" contacts of defendants in prior negotiations

provided some cause for concern that the cars or their contents might be moved even if guarded by a DEA agent. Access to high speed parkways meant that a "hit and grab" operation was possible.

It was necessary for the agents to seize the car if for no other reason than to protect the car and its contents from vandalism or theft. An expensive vehicle such as a Porsche is especially vulnerable in New York City, a fact of which the court takes judicial notice. Fed.R.Evid. 201(b). Given a choice between leaving a vehicle where it is, in circumstances such as existed here, and taking it into custody, the latter is the better choice. *United States v. 1988 BMW 750IL*, 716 F.Supp. 171, 173 (E.D.Pa.), *aff'd*, 891 F.2d 284 (3d Cir.1989). Once the agents were lawfully in the car, they were entitled to seize the cellular telephone which was in plain view. *Washington v. Chrisman*, 455 U.S. 1, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982); *United States v. Mannino*, 635 F.2d 110, 115 (2d Cir.1980).

■ After they acquired lawful custody of the car and moved it to the DEA lot, the agents were authorized to conduct an inventory search pursuant to standard procedures. The vehicle was parked in an open lot in New York City. The inventory search ensured that no other evidence or objects of value remained in the car. *See, e.g., United States v. Arango–Correa*, 851 F.2d 54 (2d Cir.1988) (routine inventory search of car seized after defendant arrested for cocaine possession was proper where purpose was to ensure that no other contraband or evidence remained in car prior to storage). The search ensured that protection was given to Busiello's valuable property. The DEA was also shielded from claims of loss through negligence.

■ The search of the vehicle was also authorized as an exigent search under *Carroll*. When the agents observed Gorman and Busiello leave the Porsche carrying the black gym bag containing the cash to be used in the drug deal, they had probable cause to believe the car contained other evidence or contraband related to the crime. There was some reason to suspect

that guns were in the car and mob associates were nearby.

The exigent circumstances in the instant case presented precisely the kind of risks of disappearance associated with the mobility of an automobile envisioned by *Carroll.* The agents had been in contact with Mundy. They had no way of knowing how many other persons would be involved in the drug deal. There were many cars going in and out of the lot so it was impossible for the agents to determine whether other confederates were on the scene. *See, e.g., Haefeli v. Chernoff,* 526 F.2d 1314 (1st Cir.1975) (car was on a public street, both suspects were in custody and there was no suspicion that suspects' confederates might approach car). It was entirely possible that other conspirators, in addition to Gorman and Busiello, were in the lot or its vicinity and would have access to the car after the suspects were arrested and the agents had left the scene. Mundy had made references to "the mob," giving the officers good reason to believe that others might be involved. The fact that the agents had the keys and the car was immobilized was of little consequence in an area where entry into and starting of cars by intruders without keys is common. *See Michigan v. Thomas,* 458 U.S. 259, 261, 102 S.Ct. 3079, 3080, 73 L.Ed.2d 750 (1982); Fed.R.Evid. 201(b).

Defendants' reliance on *United States v. LaSanta,* 978 F.2d 1300 (2d Cir.1992) is misplaced. That case must be limited to its particular facts. *LaSanta* involved the warrantless search and seizure of an automobile parked in defendant's driveway at the time defendant was being arrested in his house pursuant to an arrest warrant. The agents had intended to seize the car, but failed to get a warrant for that purpose.

Agents in *LaSanta* relied on the forfeiture statute, 21 U.S.C. 881(b)(4), to make a warrantless seizure of the car. The Court of Appeals held that the evidence obtained during the search of the car had to be suppressed because the warrantless search did not fall within any of the recognized exceptions to the Fourth Amendment's warrant requirement. The agents in *La-Santa* knew well in advance that they wanted to seize the car and had ample time to obtain a warrant. Unlike the instant case, there were no exigent circumstances and no need for police to exercise a community caretaking function.

We need not consider under the circumstances of the instant case whether the ruling in *LaSanta* limiting use of the forfeiture statute to short-circuit Fourth Amendment search and seizure requirements is applicable beyond the special circumstances of that case. The circuits are split. *See, e.g.,* allowing reliance on forfeiture: *United States v. Pace,* 898 F.2d 1218, 1241 (7th Cir.), *cert. denied sub nom., Cialoni v. United States,* 497 U.S. 1030, 110 S.Ct. 3286, 111 L.Ed.2d 795 (1990); *United States v. Valdes,* 876 F.2d 1554, 1558–60 (11th Cir.1989); denying reliance on forfeiture, in addition to *LaSanta: United States v. Salmon,* 944 F.2d 1106, 1122 (3d Cir.1991), *cert. denied sub nom., Washington v. United States,* —— U.S. ——, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992); *United States v. Linn,* 880 F.2d 209, 215 (9th Cir.1989).

## IV. CONCLUSION

The warrantless search of defendant Busiello's automobile was permissible. The cash and telephone seized as a result of the search are admissible at trial.

SO ORDERED.